EZEKIEL D. CARDER, Bar No. 206537
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
Telephone: (510) 337-1001
Fax (510): 337-1023
E-Mail: ecarder@unioncounsel.net
courtnotices@unioncounsel.net

Attorneys for Plaintiff THE BOARD OF TRUSTEES, in their capacities as Trustees of the Santa Monica UNITE HERE Health Benefit Fund

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES, in their capacities as Trustees of the Santa Monica UNITE HERE Health Benefit Fund,<br><br>Plaintiff,<br><br>v.<br><br>PLANET EXPRESS (LAX), LLC, a Florida limited liability company,<br><br>Defendant. | No.<br><br>**COMPLAINT FOR BREACH OF CONTRACT, DAMAGES, AND AUDIT (ERISA 29 U.S.C. § 1001, ET SEQ., 29 U.S.C. § 185)** |

Plaintiff Board of Trustees complains of Defendant Planet Express (LAX), LLC and for cause of action allege:

## I. INTRODUCTION

1. This suit is based on Defendant's failure to pay employee benefit contributions to Plaintiff, which sponsors health benefits for its participants and their respective beneficiaries.

2. At all times material herein, Plaintiff Board of Trustees, was, and now is, composed of the Trustees of the Santa Monica UNITE HERE Health Benefit Fund (hereinafter the "Trust Fund").

3. Defendant Planet Express (LAX), LLC (hereinafter "Defendant") is a Florida limited liability company, and at all times material herein, Defendant has been an employer within the meaning of section 3(5) and section 515 of ERISA, 29 U.S.C. §§ 1002(5), 1145, and an employer of employees in an industry affecting commerce within the meaning of section 301 of the LMRA, 29 U.S.C. § 185.

## II. JURISDICTION AND INTRADISTRICT ASSIGNMENT

4. This action arises under and is brought pursuant to Section 502 of the Employee Retirement Income Security Act, as amended ("ERISA"), 29 U.S.C § 1132, and section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

5. Venue properly lies in this district court since contributions are due and payable in the County of Los Angeles. Therefore, intradistrict venue is proper.

## III. PARTIES

6. At all times material herein, the Trust Fund was, and now is, an employee benefit plan created by written Trust Agreement subject to and pursuant to section 302 of the LMRA, 29 U.S.C. § 186, and a multi-employer employee benefit plan within the meaning of sections 3, 4 and 502 of ERISA, 29 U.S.C. §§ 1002, 1003 and 1132.

7. The Trust Fund is administered by a Board of Trustees which may bring this action in the name of the Trust Fund pursuant to the express provisions of the Trust Fund's Trust Agreement.

8. Accordingly, the Trust Fund and its respective Board of Trustees shall hereinafter be designated collectively as "Plaintiff."

## IV. ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF

9. At all relevant times, Defendant was signatory to a collective bargaining agreement with UNITE HERE Local 11 (the "Union") known as the Agreement Between UNITE HERE Local 11 And Planet Express (LAX), LLC At Los Angeles International Airport May 1, 2018 – April 30, 2020 (the "CBA") which incorporated by reference the terms and provisions of Plaintiff's Trust Agreement and required Defendant to make contributions to the Trust Fund.



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

10. Defendant promised that it would contribute and pay monthly to Plaintiff the contribution amounts set by the CBA for each hour of covered work paid for or worked by such employees in the prior work month.

11. A true and correct copy of the CBA is attached hereto as **Exhibit A**.

12. The CBA is binding upon the heirs, successors and assigns of Defendant.

13. The CBA continues automatically in full force and effect from year to year unless written notice is given by either party thereto to the other party on or before sixty (60) calendar days prior to April 2, 2020 or any annual expiration date thereafter, requesting that the CBA be terminated, modified or amended.

14. However, the Union and the Defendant continued negotiations for a successor agreement to the CBA as late as September 18, 2024, and accordingly, the CBA has remained in full force and effect from April 1, 2020 to the present, including Defendant's obligations thereunder to make contributions to the Trust Fund.

15. The CBA provides, at its respective Exhibit A: Wage Scales, that the Union may allocate $0.30 per hour bucket increases toward the Trust Fund and other trust fund effective July 1, 2018 and July 1, 2019.

16. The Union triggered such allocations in the amounts of $0.30 per hour each to the Trust Fund as memorialized in a letter to Defendant dated September 28, 2022.

17. The Trust Agreement provides for prompt payment of all delinquent contributions to the Trust Fund, and provide for the payment of interest on all delinquent contributions, liquidated damages as a reasonable attempt to cover the damages incurred by the Trust Fund in the event of a breach by the employer where it would be impracticable or extremely difficult to calculate losses at the time the CBA was negotiated, attorneys' fees and other collection costs, and for the audit of the signatory employer or employers' books and records in order to permit Plaintiff to ascertain whether all fringe benefit contributions have been timely paid as required by the applicable CBA and law.



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

## V. FIRST CLAIM FOR RELIEF

## (BREACH OF CONTRACT BASED ON FAILURE TO PAY CONTRIBTUIONS)

18. Plaintiff incorporates and realleges by reference all the allegations stated hereinabove.

19. Defendant has failed to make any payments on contributions to the Trust Fund owed for the work months of July 2024 through the present, even after notice to Defendant of its failure to remit such payments.

20. Written demand has been made of Defendant for payment of the amounts determined to be due and owing.

21. To date, Defendant has refused to pay such amounts and there is now due, owing and unpaid to Plaintiff from Defendant, fringe benefits contributions in the amount of at least $137,071.50 and liquidated damages in the amount of at least $13,707.14, with interest accruing up to the time of filing of this Complaint in relation to such unpaid contributions which have not been submitted to the Trust Fund as required by the CBA and the Trust Agreement.

## VI. SECOND CLAIM FOR RELIEF

## (ACTUAL DAMAGES FOR BREACH OF CONTRACT)

22. Plaintiff incorporates and realleges by reference all the allegations stated hereinabove.

23. Defendant has failed, neglected and refused to make timely fringe benefit contributions as required by the CBA and the Trust Agreement, and has caused Plaintiff actual damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays judgment against Defendant as follows:

1. That Defendant be ordered to pay at least $150,778.64 in unpaid contributions, as well as all liquidated damages and interest in relation to such unpaid contributions, as accrued from July 2024, up to the time of the filing of this Complaint;

2. That Defendant be ordered to pay actual damages according to proof;

3. That this Court issue an Order permanently enjoining Defendant for so long as it remains obligated to contribute to the Trust Fund, from failing, neglecting, or refusing to timely



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

submit required monthly contributions reports and payments as required by the terms of the CBA, and submit to an audit pursuant to the Trust Agreement and ERISA sections 502(a)(3) and (g)(2) (29 U.S.C. § 1132(a)(3), (g)(2));

4. That Defendant be ordered to pay Plaintiff's attorneys' fees pursuant to ERISA;

5. That Defendant be ordered to pay Plaintiff's costs of suit herein pursuant to ERISA;

6. That this Court grants such further relief as this Court deems just and proper; and,

7. That this Court retain jurisdiction of this matter to enforce the Order compelling payment of all amounts found due and owing.

Dated: March 28, 2025

WEINBERG, ROGER & ROSENFELD
A Professional Corporation

/S/ *EZEKIEL D. CARDER*

By: EZEKIEL D. CARDER

Attorneys for Plaintiff THE BOARD OF TRUSTEES, in their capacities as Trustees of the Santa Monica UNITE HERE Health Benefit Fund



WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
(510) 337-1001

# EXHIBIT A

# AGREEMENT

Between

UNITE HERE LOCAL 11
(the "Union")

And

Planet Express (LAX), LLC
(the "Employer")

At

LOS ANGELES INTERNATIONAL AIRPORT

May 1, 2018 – April 30, 2020

## TABLE OF CONTENTS


| | | Page |
|---|---|---|
| ARTICLE 1 -- | DEFINITIONS | 1 |
| ARTICLE 2 -- | UNION SECURITY | 2 |
| ARTICLE 3 -- | MANAGEMENT'S RIGHTS | 5 |
| ARTICLE 4 -- | WAGE CONDITIONS | 5 |
| ARTICLE 5 -- | HOURS OF WORK AND OVERTIME | 6 |
| ARTICLE 6 -- | VACATIONS | 8 |
| ARTICLE 7 -- | LEAVES OF ABSENCE | 9 |
| ARTICLE 8 -- | IMMIGRATION RIGHTS | 11 |
| ARTICLE 9 -- | SENIORITY | 12 |
| ARTICLE 10 -- | GRIEVANCE PROCEDURE | 14 |
| ARTICLE 11 -- | ARBITRATION | 15 |
| ARTICLE 12 -- | WORKING CONDITIONS | 16 |
| ARTICLE 13 -- | EQUAL BENEFITS ORDINANCE | 17 |
| ARTICLE 14 -- | UNIFORMS | 18 |
| ARTICLE 15 -- | SUCCESSORS | 18 |
| ARTICLE 16 -- | LIMITATION OF FILING OF CLAIMS | 18 |
| ARTICLE 17 -- | HOLIDAYS | 19 |
| ARTICLE 18 -- | HEALTH AND WELFARE PLAN | 19 |
| ARTICLE 19 -- | STRIKES AND LOCKOUTS | 21 |
| ARTICLE 20 -- | SICK PAY BENEFIT | 21 |
| ARTICLE 21 -- | FUNERAL LEAVE | 21 |
| ARTICLE 22 -- | DISCIPLINE | 22 |
| ARTICLE 23 -- | SHOPPER SERVICES | 23 |
| ARTICLE 24 -- | LABOR/MANAGEMENT CONFERENCES | 24 |
| ARTICLE 25 -- | FULL AGREEMENT | 24 |
| ARTICLE 26 -- | DURATION | 24 |
| EXHIBIT A -- | WAGE SCALES | 26 |
| EXHIBIT B -- | ATTENDANCE POLICY | 27 |

**AGREEMENT**
**By and Between**
**UNITE HERE LOCAL 11**
**And**
**Planet Express at Los Angeles International Airport**

This Agreement is made by and between UNITE HERE Local 11, party of the first part (hereinafter designated "Union"), and Planet Express (LAX), LLC located at Los Angeles International Airport, party of the second part (hereinafter designated "Employer").

## ARTICLE 1 -- DEFINITIONS

1.1 "Employee" or "employees" is defined as all of the Employer's employees at the Los Angeles International Airport within the jurisdiction of the Union and working in those classifications listed in Exhibit "A" hereto, except as otherwise modified by the express terms of this Agreement. Where the Employer, subsequent to the date hereof, subleases or grants a concession to a sublessee or concessionaire having employees within the definition above set forth, such sublessee and concessionaire shall be included within the meaning of "Employer" and shall be bound by the provisions of this Agreement. The Employer may outsource work normally performed by bargaining unit employees unless the outsourcing significantly changes the Employer's existing operations. Notice shall be given to the Union of any such outsourcing and upon request, the Employer will meet with the Union and discuss such outsourcing.

1.2 Supervisory employees who regularly perform any work, excluding work in cases of occasional, sporadic, or emergency basis including, but not limited to training, rush periods and meal periods, covered by the classifications listed in Exhibit "A" shall be subject to the terms and conditions of this Agreement, except that the Manager in charge of the establishment, provided the Manager does not regularly work any craft, and actual bona fide owners, are excluded from the provisions of this Agreement.

1.3 LEAD EMPLOYEES. "Leads" are regularly scheduled employees designated by Management to carry extra responsibilities. Leads work in and oversee work in two or more concepts and perform "key carrier" responsibilities in multiple concepts.

a. The Employer agrees to post vacant Lead positions for a period of five days and interview employees who bid on such posting.

b. Leads filling in for other employees shall suffer no reduction in pay.

c. Leads shall not coach and counsel other bargaining unit employees.

1.4 INTRODUCTORY EMPLOYEES. All employees who are first employed shall be considered "Introductory Employees" for a period of ninety (90) calendar days. The Employer shall have the right to discipline or terminate the employment of an Introductory Employee and such discipline or termination may not be subject to the grievance procedure.

1.5 INTRODUCTORY WAGE RATES. Introductory Employees shall receive wages at the Agreement rate for their respective classification and their rights and duties shall in all other respects be governed by the terms of this Agreement.

1.6 Use of masculine pronouns or terminology within this Agreement is for simplicity only and is intended to be all-inclusive of both male and female.

**ARTICLE 2 -- UNION SECURITY**

**A. Union Security**

2.1 The Employer recognizes the Union as the exclusive bargaining representative of the employees working within the classifications set forth in Schedule "A" for the purpose of collective bargaining.

2.2 All present employees who are not members of the Union on the effective date of this Agreement shall, as a condition of employment, on or before the 31st calendar day following the effective date of this Agreement, become and remain members in good standing of the Union.

2.3 All new employees hired on or after the effective date of this Agreement shall, as a condition of employment, on or before the 31st calendar day following the beginning of such employment, become and remain members in good standing of the Union.

2.4 For purposes of this Agreement, the terms "members of the Union" and "members in good standing" shall be defined as one who timely tenders any initiation fee and/or monthly dues or fees as set forth in the Constitution and Bylaws of the Union and in accordance with applicable law.

2.5 New employees may be hired from any source, however, any person employed shall be advised at the time of employment that the Employer is operating under a Union contract.

2.6 The Union agrees to accept such persons for membership upon terms and qualifications not more burdensome than those applicable at such time to other applicants of the Union.

2.7 The Employer agrees to provide, assist in the completion of, and remit any forms necessary to perfect membership in the Union.

**B. Union Bulletin Boards**

2.8 Union Bulletin Boards. The Employer shall provide the Union with at least one bulletin board per terminal, of reasonable size in a reasonably prominent non-public area, for posting of notices and other material by the Union, which shall not be derogatory toward the Employer or supervisors or branded partner.

**C. Union Representatives**

2.9 A properly accredited representative of the Union shall be allowed reasonable access to inspect the work conditions of the members. Upon entering the facility, the Union Representative shall notify the manager on duty of his/her presence in the facility, provided there is a manager on duty readily available. The Union Representative shall not engage in activities that are disruptive to operations, such as pulling employees away from work or engaging in conversations while they are on the clock.

**D. Union Dues Authorization**

2.10 The Employer agrees to deduct Union initiation fees and monthly dues from employees' earnings as required. Deduction shall be authorized in writing by the employees on Dues Deduction Authorization and Assignment forms supplied by the Union. The Employer shall furnish the Union on a monthly basis a record of those employees for whom deductions have been made and the amount of those deductions. Said deductions shall be made from the last payroll period of each month and shall be deposited directly into the Union's bank account not later than the 15th day of the following month. The Employer is not liable for any mistakes related to this section which are not brought to its attention in writing within three years. The reports described shall be sent in Excel format to the Union via e-mail or digital storage media.

2.11 The Union shall be privileged to change the amount of initiation fees and monthly dues upon thirty days written notification to the Employer.

2.12 The Union shall hold the Employer harmless on account of any liability, claim, suit or dispute arising out of the collection of moneys under this Article including the reasonable cost of any defense made necessary by any such liability, claim, suit or dispute. If an Employer has agreed to the deduction of dues pursuant to this Article and fails to collect or pay over such dues pursuant to this Article, the Employer shall be liable for regular dues and initiation fees which the Union loses by reason of the Employer's failure. This provision does not affect the obligations of the employees under this Article.

**E. Union Shop Stewards**

2.13 The Union shall advise the Employer of the names of employees who are authorized to act as Union Stewards, not to exceed one per shift, per terminal. Such stewards shall be considered on-site representatives of the Union and they may carry out duties in any terminal.

2.14 Shop Stewards will be certified by the Union as having completed a course of study concerning the duties and responsibilities of a Shop Steward under this Agreement. Said certificate will be sent to the Employer within thirty (30) days of such designation.

2.15 The Shop Steward shall not interfere with the management of the business, direct the work of employees or pull employees from assigned stations unless the employee is on break or it has been approved by the manager. The duties of the Shop Steward shall not interfere with his or her duties as an employee except to the extent that arrangements are made with the manager to carry out Union duties during work hours.

2.16 The Employer shall provide an "all terminal badge" for all Shop Stewards provided such action comports with FAA and LAWA security guidelines and approval.

**F. New Employee Orientation**

2.17 Union representatives or designated shop stewards shall be afforded the opportunity to meet with new hires for thirty minutes during the Employer's orientation meeting for the new employees. The Union shall furnish the Employer with a specific list of shop stewards who are trained to conduct the Union's presentation. The Union shall furnish the Employer with an outline of its standard presentation. The Employer may schedule the orientation meetings at the Employer's convenience and advise the Union of the time and date. It is the Union's responsibility to have its representative present.

**G. Voluntary Political Deduction**

2.18 The Employer agrees to honor voluntary political deduction authorizations from its employees in the following form:

I hereby authorize the Employer to deduct from my pay the sum of $____ per month and to forward that amount to the UNITE HERE TIP "To Insure Progress." This authorization is signed voluntarily and with the understanding that the UNITE HERE TIP, "To Insure Progress" will use this money to make political contributions and expenditures in connection with Federal elections. I am aware of my right to refuse to sign this authorization without reprisal. This authorization may be revoked by mailing notices of revocation by United States Registered or Certified Mail, Return Receipt Requested, to the Treasurer, UNITE HERE TIP, "To Insure Progress", 275 7th Avenue, New York, NY 10001-6708, and to the Employer.

The Political contribution deduction shall be made once each month during which an employee who has performed compensated service and has in effect a voluntarily executed political contribution deduction authorization. The money shall be remitted within thirty (30) days after the last day of the preceding month to the UNITE HERE TIP ("To Insure Progress"), 275 7th Avenue, New York, NY 10001-6708, accompanied by a form stating the name and Social Security number of each employee for whom a deduction has been made and the amount deducted. A copy of said form shall be sent to UNITE HERE Local 11each month via email.

The Union shall hold the Employer harmless on account of any liability, claim, suit or dispute arising out of the collection of moneys under this Article, including the reasonable cost of any defense made necessary by any such liability, claim, suit or dispute.

The Union shall be solely responsible for the distribution, collection and timely submission to designated Human Resources personnel of the authorization forms required under Section 2(D), (G).

## ARTICLE 3 -- MANAGEMENT'S RIGHTS

3.1 Management prerogatives and the exercise thereof shall be unqualified and shall remain exclusively in the Employer and shall include, without limitation, all matters not covered by this Agreement as well as matters covered by this Agreement, to the extent that the latter are not limited or modified by the terms and conditions hereof.

3.2 It is further agreed that the following enumeration of management rights shall be deemed to include other rights not herein enumerated but shall be deemed representative and characteristic of the customary and usual rights which are retained by the Employer; the right to hire, classify, assign, promote or demote employees; the rights to determine the products to be produced and sold, the location or relocation of facilities and the processes and means of work, the right to subcontract out work, the right to establish conduct and safety regulations, schedules and technological changes.

3.3 The Employer may freely initiate and discontinue experimental programs not to exceed one year in duration, as incentives or as positive reinforcement for employees, including but not limited to programs in the areas of attendance, safety or recruiting, provided employees are notified in advance that it is a temporary experimental program and it does not conflict with the provisions of this Agreement.

## ARTICLE 4 -- WAGE CONDITIONS

4.1 The wage scales set forth in Exhibit "A" shall apply to the employees covered by this Agreement

4.2 No employee shall have his wages reduced by the signing of this Agreement.

4.3 The Employer will not permit any employee to work in a classification for a wage lower than the classification wage rate provided for in this Agreement.

4.4 All employees who work a shift of five (5) or more hours shall be entitled to one (1) free meal to be eaten under the rules, regulations and procedures established by the Employer. The Employer and the Union will periodically evaluate and determine locations and menu choices which shall be available for employees in order to provide a variety of wholesome meal options while at the same time ensuring that customer service is not compromised.

4.5 All tips and gratuities are the property of the employee and shall not be considered other than his sole property. Banquet tips or gratuities shall be distributed by the Employer according to a formula provided by Employer to Union, which shall specify the specific dollar amount or percentages to be given to each employee. Employees shall have access to their cash tips at all times and at no time shall tip jars or tip jar containers be locked. Tips should never be mixed with an employee's assigned funds nor used to make change. Tips for the To-Go Service and Earl of Sandwich must be kept in tip jars mutually agreed upon by the Employer and Union. Any potential issues that occur between employees regarding the splitting of cash tips amongst employees shall be the responsibility of the Union to settle in a manner not interfering with Employer's Management Rights.

4.6 An employee who relieves another employee shall not be paid less than the classification rate of the employee being relieved for the time of the relief period, provided the employee doing the relief works a minimum of one and one-half (1 ½) hours in the higher classification.

4.7 All scales rates are minimum scales and the Employer may pay a superior worker more. The Union shall receive notice if the Employer unilaterally decides to increase the rate of pay for a particular classification.

4.8 In case employees are required by the Employer to attend meetings for the convenience of the Employer outside of regular shift hours, such times shall be paid for. In the event an employee is required to attend a meeting which is more than two (2) hours from the beginning or end of the employee's scheduled shift, the employee will receive a minimum of two (2) hours pay. In the event an employee is required to attend a meeting within two (2) hours of the beginning or end of the employee's regularly scheduled shift, the employee will be paid for the time in attending the meeting plus the time between the meetings and the employee's shift.

4.9 The Employer may establish new classifications with different duties than are covered by existing classifications but will bargain with the Union concerning the wage rate to be assigned to such classifications. Mere change of job title does not establish a new classification.

4.10 Reporting Pay. Notwithstanding any other provision of this Agreement, nothing shall prevent the Employer from sending affected employees home provided Employer pays reporting pay of four (4) hours straight time pay [three (3) hours in the case of servers], or for actual hours worked, whichever is greater. Employees who, with the permission of the Employer, voluntarily leave work before the end of their scheduled shift shall be paid for time actually worked on that shift. Employer is not required to pay reporting pay in the event where Employer is forced to close all or part of its establishment on account of circumstances beyond the Employer's control.

## ARTICLE 5 -- HOURS OF WORK AND OVERTIME

5.1 Seven and one-half hours worked within an eight hour shift, including a one-half hour unpaid meal period, shall constitute a day's work. At the option of the Employer, with notice to the Union, the Employer may institute by classification or shift, a nine and one-half hour shift of work within 10 hours, including an unpaid meal period, to constitute a day's work. In no way is this to be construed a guarantee of hours of work or shifts. Additionally, the workweek shall start Monday at 12:00 AM and conclude on Sunday at 11:59 PM. If the Employer determines that there is insufficient work on any given day, then the Employer may require employees to clock out in the following order: (1) volunteers then (2) employees in inverse order of seniority by classification in that unit. Employer has the right to change the workweek as long as Employer maintains the 7 day workweek with the stated amount of hours for employees.

5.2 Any work performed in excess of seven and one-half hours per day shall be compensated for at time and one-half of the regular rate of pay as designated in the schedule of wages except where a ten hour day's work has been instituted, in which case time and one-half shall be paid after nine and one-half hours of work. Any work performed in excess of eleven and one-half hours per day shall be compensated for at two times the employee's rate of pay.

5.3 Employees working a sixth day in their work week shall receive time and one-half their regular rate of pay for the sixth shift. Employees working on the seventh day in the work week shall receive double-time their regular rate of pay for the seventh shift. In the event a ten hour day is instituted four days shall constitute a normal work week and any employee working the fifth or sixth day shall be compensated at one and one-half times the regular rate of pay and double their regular rate of pay on the seventh day.

5.4 The above Section 5.3 shall not apply in cases of voluntary shift changes or emergencies.

5.5 There shall be no pyramiding of premium and/or overtime pay, except as specifically provided otherwise within this Agreement regarding overtime on holidays.

5.6 Insofar as practical, ten hours must pass between the end of an employee's shift and the beginning of the employee's next shift. This provision will not apply in cases of emergency or upon mutual agreement between the Employer and the employee.

5.7 Employee's work schedules shall be posted three days in advance of any changes except in cases of emergency, Acts of God, or strikes. It is the employee's responsibility to check such schedule. However, it is understood that for employees whose schedules rarely change, management shall notify the employee of any schedule change. Should an employee request a day off without pay, such request shall be made in writing and submitted to the store manager, chef, or assistant store manager at least seven (7) days prior to the requested day off. The Employer shall respond to the request in writing within forty-eight (48) hours of the request being submitted.

5.8 Employees scheduled to work five (5) days a week shall receive normally two consecutive days off in their work week unless Employer and employee mutually agree to other days off. Employees scheduled to work a four day, ten hour a day schedule shall receive normally three consecutive days off in their work week.

5.9 An employee who is scheduled for a ten hour shift shall be paid for no less than ten hours if less than ten hours are actually worked in the day, unless the employee voluntarily goes home early.

5.10 Any employee shorted on a paycheck will be paid within three business days of notifying their manager. Any employee receiving an overage in pay shall repay the Employer through payroll deduction on the next pay date.

5.11 Short Shift Employees. A short shift employee shall be defined as any employee who works less than eight hours, but not less than four hours (except waiters/waitresses who may work three hours in a day). Any employee who works five hours or more in any

given day shall be entitled to a thirty minute unpaid meal period. Only employees hired after September 30, 1982 shall be assigned short shift schedules, except where a change in business requires a reduction in the work force. In this event, present employees shall have the option of accepting a short shift schedule or being placed on lay-off in accordance with their seniority. Employees must exercise this option at the time of lay-off.

5.12 Breaks. The Employer will comply with wage and hour laws with regard to breaks and meal periods.

**ARTICLE 6 - VACATIONS**

6.1 Employer provides vacation to maintain the health, morale, and efficiency of employees. As such, all employees are encouraged to take their annual vacation accrual on a yearly basis.

6.2 Any employee in the employ of the Employer for a period of one uninterrupted and continuous year shall accrue a maximum one week's vacation with pay at the rate of 0.019 vacation hours per hour worked. An employee in the employ of the Employer for two uninterrupted years shall accrue a maximum two weeks' vacation with pay per anniversary year at the rate of 0.038 vacation hours per hour worked.

6.3 Any employee who has been or is in the employ of the Employer for a period of ten uninterrupted and continuous years shall accrue a maximum three weeks' vacation with pay at the rate of 0.058 vacation hours per hour worked. Any employee who has been or is in the employ of the Employer for a period of fifteen or more uninterrupted and continuous years shall accrue a maximum four weeks' vacation per anniversary year with pay per anniversary year at the rate of 0.077 vacation hours per hour worked.

6.4 If an employee quits during the first year or is discharged before six months of service, he shall not receive any vacation pay, but if the employee is discharged during the first year and after six months of service with the Employer, he shall receive his accrued, unused vacation hours.

6.5 After twelve months service with Employer, employee who is terminated for any reason shall receive his accrued, unused vacation hours.

6.6 A vacation request period shall be posted by January 15th and shall stay posted through January 31st of each year. Management will respond to all vacation requests submitted during this period no later than February 21st of each year.

Employees shall be granted their vacation schedules in accordance with seniority. Employees who decline to choose a vacation schedule at the time of the bid may request their vacation with thirty days' notice at any time during the year. Vacation requests after the annual bidding shall be on a first-come, first-serve basis. The Employer shall not unreasonably restrict the times in which employees may choose vacation schedules. Management will respond no later than three (3) weeks following the request and such response will either approve the request or state the reason why the request is not

approved. Failure by management to respond to an employee regarding their vacation request shall be deemed as granted.

6.7 An employee reinstated from a termination will have his vacation pro-rated to the original hire/anniversary date unless the terms of the settlement agreement are to the contrary.

**ARTICLE 7 - LEAVES OF ABSENCE**

7.1 Personal Leave. Leaves of absence for personal reasons without pay or benefits contributions, not to exceed thirty days may be granted if, in the opinion of the Employer, good and sufficient reasons to exist to warrant such leave. An employee returning from a Personal Leave of Absence will be returned to a position provided the employee presents himself/herself to the Human Resource Manager. At the Employer's option a personal leave of absence may be extended an additional thirty days provided the extension is requested in writing at least one week prior to the expiration of the original leave of absence.

7.2 Medical Leave. Medical Leaves of Absence without pay or benefits contributions not to exceed thirty days shall be granted by the Employer which shall be given reasonable notice of the commencement date, estimated duration, and a doctor's certificate verifying the employee's disability. Medical leaves shall be extended in thirty day periods up to a total not to exceed four (4) months except as set forth in Section 7.9(a) provided the employee submits a request for extension at least one week prior to the expiration of the original leave of absence and accompanies the request with a doctor's certificate verifying the employee's disability. Upon expiration of the medical leave, the employee shall furnish the Employer with a statement signed by the physician verifying the fitness of the employee to return to his/her job.

7.3 Members of the Executive Board of the Union shall be allowed time off work, without pay or benefits contributions, to attend scheduled Executive Board meetings upon 48 hours notice by the Union to the Employer. The Union will make a good faith effort to make such requests before the applicable schedule is posted.

7.4 Members of the Contract Negotiating Committee shall be allowed time off, without pay or benefits contributions, for negotiating meetings upon 48 hours notice by the Union to the Employer, provided such requests can be reasonably accommodated by the Employer. The Union will make a good faith effort to make such requests before the applicable schedule is posted.

7.5 Family Leave. The Employer will comply with the Federal Family and Medical Leave Act of 1993 and the California Family Rights Act. A family care leave of absence may be made available provided the employee has one or more years of continuous service at the time of his request for the leave, and further provided the leave does not exceed a total of twelve weeks in a twelve month period. The above notwithstanding, all employees with one year of service who have worked 1250 hours or more in the prior year shall be covered under the provisions of the Family and Medical Leave Act of 1993

(FMLA) and the California Family Rights Act (CFRA) as they may be amended. The FMLA and the CFRA are the controlling documents, subject to change, therefore the following is not binding but serves only as illustration of the types of coverage anticipated.

a. Eligible employees shall be granted up to a total of twelve (12) work weeks of unpaid leave during any twelve month period for one of the following reasons: for the birth or placement of a child for adoption or foster care; to care for the serious health condition of a spouse, parent, child or domestic partner; to attend to an employee's own serious health condition.

b. At the conclusion of the leave, an employee will be returned to his/her former or equivalent position. The employee will continue to accrue seniority in accordance with this Agreement.

c. An employee may take leave on an intermittent basis, in blocks of time or by reducing his/her normal weekly or daily work schedule, to care for his/her own serious health condition or a defined family member's serious health condition.

d. When the need is foreseeable, the employee will notify the Employer thirty days or more if possible, in advance of his/her need for the leave.

e. The Employer will make all contributions to the Health and Welfare Trust fund as required by law for the term of the leave, which shall not exceed twelve work weeks, subject to reimbursement. The employee shall continue to be responsible to make any self-contributions.

f. This provision shall be administered in conjunction with the CFRA, which provides for four additional weeks of leave for pregnancy disabilities.

7.6 Maternity Leave. The Employer will comply with applicable state and federal laws regarding maternity leave.

7.7 Military Leave. The Employer will comply with applicable state and federal laws regarding military leave.

7.8 Union Leave. In the event that an employee is elected or appointed to a position of full-time service with the Union, the employee shall continue to accrue seniority for the first six months, and seniority will be retained for the balance of such leave up to three years, with the understanding that this applies to no more than two employees at a time from the Employer. Upon completion of said leave, the employee shall be returned to his same job and schedule unless it no longer exists, in which case he will be placed in the position and schedule most similar to that which he left.

7.9 General Conditions:

a. An employee with six (6) months of service or more may request a Leave of Absence in writing. An employee with more than twenty-four (24) months of

service may request a Medical Leave of up to six (6) months or as required by applicable law. An employee with more than twenty-four (24) months of service may request a Personal Leave of up to twelve (12) months. All Leaves of Absence must be requested in writing and approved by the General Manager or designee.

b. If a Leave of Absence is granted, the employee's requirements for eligibility for his/her vacation benefits shall be extended by the length of time equivalent to his/her leave of absence.

c. If an employee accepts other employment or works on any other job while on a leave of absence or fails to return to work on the expiration of his/her leave, the employee shall be considered a voluntary quit, except for Leaves for Union service.

d. An employee returning from a medical leave of absence shall be returned to his/her same classification and position held prior to his/her leave unless it no longer exists in which case the employee will be placed in the most similar position to which he/she left. The employee must present himself/herself to the Human Resources department prior to the expiration date of the leave of absence.

e. For all leaves of absence, the employee must complete the Employer's leave of absence forms, provide the Employer's leave of absence form to the employee's treating physician for completion, when applicable, and submit the completed leave of absence form to the Employer.

**ARTICLE 8 - IMMIGRATION RIGHTS**

8.1 To the extent consistent with applicable law, no employee covered by this Agreement shall suffer any loss of seniority, compensation or benefits due to any changes in the employee's name or social security number, provided that the new social security number is valid and the employee is authorized to work in the United States. However, if the Employer is notified by a third party that the employee has provided false information to gain employment with Employer at any time prior to the employee presenting valid information, the employee will be subject to investigation and if it is determined that the employee is not the rightful owner of the identity utilized to gain employment with Employer, the employee shall be subject to immediate termination subject to reinstatement as provided in Section 8.3 below.

8.2 The Employer agrees to provide to the Union copies of the regular monthly reports reflecting the names of employees whose work authorizations are known to be expiring in the next thirty (30) days. The Union shall hold the Employer harmless on account of any liability, claim, suit or dispute arising out of the provision of information relating to employee work authorization, including the reasonable cost of any defense made necessary by any such liability, claim, suit or dispute. Nothing in this subsection limits the Employer's ability to comply with IRCA or other government directives.

8.3 In the event an employee, who has completed his or her probationary period, is terminated because he or she cannot provide legitimate proof or identity or legal authorization to work in the United States, the employee shall be reinstated as soon as practicable to his or her former position without a loss in seniority, upon the employee providing proper work authorization within six (6) months of the date of termination. If an employee is unable to provide the required documents within six (6) months, but is able to do so within twelve (12) months or his or her termination, the Employer will hire the employee into the next available opening in the employee's former classification upon presentation of proper work authorization, but as a new hire without previous seniority. The parties agree that such employees will be subject to a new probationary period.

8.4 If an employee with two or more years of service needs additional time (more than provided for in Section 8.3 above), the Employer will hire the employee into the next available opening in the employee's former classification upon presentation of proper work authorization, but as a new hire without seniority. The parties agree that such employees will be subject to a new probationary period.

8.5 Upon request, the employer agrees to furnish to any employee terminated because he or she is not authorized to work in the United States, a personalized letter stating the employee's rights and obligations under this Section.

**ARTICLE 9 - SENIORITY**

9.1 Preamble. The Employer and the Union agree that the purpose of seniority is to afford consideration to senior employees in recognition of their length of service. Seniority is further intended to provide maximum work opportunities to senior employees.

9.2 Definition. Seniority is an employee's unbroken length of continuous service with the Employer measured in years, months and days from his most recent date of hire into the bargaining unit. When two or more employees are hired on the same day, their seniority shall be determined by the lowest last four digits of their Social Security number, and if need be, in the case of a tie, the second and third digits, etc.

9.3 Filling Job Vacancies. In filling job vacancies which may exist within the bargaining unit, qualified employees from within the bargaining unit shall be given preference in filling said job vacancies prior to the consideration of other applicants. Seniority shall be the determining factor in filling job vacancies when the Employer determines that the senior employee is qualified and has the ability to perform the job. In the event of a dispute as to the qualifications or ability of an employee to fill a job vacancy, the Union may file a grievance. All job openings must be posted for a period on no less than 5 days in all terminals where Employer has operations (excluding Saturdays, Sundays and holidays).

9.4 In the event that an employee, within ninety (90) calendar days of his promotion or transfer, desires to return to his former position or the Employer deems him not qualified to hold the new position, he shall be returned to his former classification without loss of

seniority. This provision shall apply to promotions or transfers to Employer positions both inside the bargaining unit and outside the bargaining unit.

9.5 Layoff and Recall. When it is necessary to layoff employees, those employees with the least amount of seniority in the affected classification shall be laid off first. When the workforce is increased in an affected classification, employees on layoff shall be recalled in reverse order of layoff beginning with the most senior laid off employee in the classification. This provision shall not apply to private club employees, except to the extent that said employees who are laid off may use their seniority to move into any other work unit, as otherwise permitted in this Agreement. All other provisions of this Agreement notwithstanding, if a work unit requires employees to complete a training certification process, no employee may exercise their seniority so as to reduce the certified staff in a work unit that will then be below 80% certified.

9.6 Scheduling. When an employee's regular schedule in a given work unit and classification are changed, the Employer will re-bid the schedules within that work unit and classification upon written request from the Union. Seniority within said groups shall prevail in all such schedule bidding. Temporary student or trainee employees shall not be included in schedule bids. The Employer shall have the right to assign temporary student or trainee employees to fill vacancies on the schedules and to fill vacancies due to unanticipated short term staffing needs. Should "premium" schedules be created subsequent to the bid taking place, those schedules shall be offered to senior employees prior to being assigned to a temporary student or trainee employee. Schedules will not be re-bid except for legitimate business needs with the approval of the GM or his/her designee. Nothing contained in this section shall be construed to interfere with the Employer's right to establish the hours and days of operation and the number of employees to be scheduled. It is understood, however, that the Employer shall guarantee at least 70% of the positions within a classification to be scheduled at 40 hours per week and the Employer shall additionally endeavor to exceed this 70% minimum goal as practical within the context of the Employer's business needs.

9.7 Break in Seniority. Seniority shall be forfeited when any of the following occur:

a. Resignation or discharge

b. Failure to report to work immediately following a physician's release from illness or injury, or failure to report to work at the expiration of an authorized leave of absence unless excused by the Employer.

c. Failure to report to the Employer for reinstatement after layoff within 72 hours and after a letter is sent to the employee's last address of record with the Employer, or else within 72 hours of attempted delivery, if address is incorrect or no one accepts delivery, provided said letter is sent so as to have proof of receipt or attempted delivery at said address.

d. An employee is not recalled within twelve (12) consecutive months from layoff (except that layoff for construction or remodeling is unlimited pending completion).

e. Failure to inform the Employer while on layoff or authorized leave of a change of address.

f. Absent for two (2) consecutive shifts without notice to the Employer, except in the event where an employee is unable to give notice and proves to the Employer's satisfaction that circumstances or events were beyond the employee's control.

g. Falsification of the reasons for a leave of absence.

9.8 Once an employee completes his ninety (90) day probationary period, his seniority shall be retroactive to his most recent date of hire with the Employer.

9.9 Upon request, the Employer shall furnish the Union with a current seniority list every six (6) months.

**ARTICLE 10 - GRIEVANCE PROCEDURE**

10.1 A grievance is hereby defined as any claim or dispute between the Employer and the Union or between the Employer and any employee which involves interpretation, application or enforcement of this Agreement disputed between the parties. Employees awaiting the outcome of a grievance or arbitration are to continue to follow the rules and instructions of the Employer in the interim.

10.2 All grievances must be filed and processed in accordance with the following exclusive procedure:

Step 1. The employee or Union that has a grievance shall discuss his grievances with his supervisor or the Manager within fifteen (15) days of the occurrence or of the time the grievant should have reasonably had knowledge of the occurrence which gave rise to the grievance. The grievant has the right to request the presence of a Union Representative at this Step One meeting. Similarly, Employer grievances must be discussed with the Union within said fifteen (15) days.

Step 2. If the grievance is not settled in the Step One meeting, the grievance may be appealed by the employee or the Union to Step Two by filing a written grievance with the General Manager or his designated representative within ten days of the Step One meeting. Each written grievance must set forth the facts giving rise to it, any additional facts relied upon, the Section or Sections of the Agreement alleged to have been violated and the remedy or correction desired. Within five (5) days after the filing of the written grievance, the General Manager or his designated representative will schedule to meet with the Union in an attempt to settle the grievance. The Employer shall submit a written response to the grievance within ten (10) days of the Step Two meeting. All termination grievances and disputes of contract language shall begin at Step Two. Similarly,

Employer grievances at Step Two shall be filed with the Union President, with the same requirements to be followed.

10.3 Mediation. In the event a resolution cannot be reached at Step Two, it may be submitted to one unpaid representative designated by the State Mediation and Conciliation Service for non-binding mediation. Both parties must agree in writing in order for a grievance to be so mediated. The representative shall hear a case within ten (10) days after receipt of notice given in writing by either party. If the aggrieved party fails to notify the other of its intention to pursue said grievance to arbitration within fifteen (15) days after the mediation hearing, then the grievance shall be considered abandoned.

10.4 Time Limits. If the Union or the employer does not file the written grievance within the time limits set forth in Step Two, the grievance shall be considered settled on the basis of the last disposition by the responding party. If a written response is not made within the time limits set forth in Step Two, the grievance will be considered sustained. The time limits specified in this Article may be extended by mutual written agreement between the Employer and the Union. For purposes of grievances and arbitrations, "days" shall be exclusive of Saturdays, Sundays and holidays.

10.5 This Article shall not be operative in case the Trustees of the Health, Welfare fund or Retirement Fund determine that the Employer is delinquent in the required contribution hereunder.

**ARTICLE 11 - ARBITRATION**

11.1 In the event the Union or the Employer desires to pursue or grieve to arbitration, they shall so notify the other party in writing within fifteen (15) days from receipt of the written response after the Step Two meeting.

11.2 If the grievance is not settled on the basis of the foregoing procedures, the Union or the Employer may submit the issue, in writing, to final and binding arbitration. Whichever party filed the grievance shall then have seven (7) days from the date of the letter of intent to arbitrate, to request a panel of arbitrators from the FMCS. Within ten (10) days from receipt of said list, the parties shall alternate in striking a name from the panel, and the parties will also alternate who strikes first for each arbitration matter. If the grievance is not scheduled within this time frame because one of the two parties does not respond to a request to strike for a name, the party that has followed this procedure may unilaterally choose an arbitrator from the FMCS list. After an arbitrator has been selected by this process, the parties have fifteen (15) days to schedule a hearing date. If the grievance is not scheduled within this timeframe because one of the two parties does not respond to a request to choose a date for arbitration, the party that has followed this procedure may unilaterally select a date for arbitration.

11.3 Before submission of the grievance to the arbitrator, the parties shall set forth in writing specifically the issue or issues to be submitted to arbitration, and the arbitrator shall confine his decision to such stipulation of issue or issues. If the stipulation of issue or issues has not been arrived at by the parties at the time the arbitrator is present to hear the

case, the original grievance and the written decision and appeals submitted during the processing of the grievance shall be used and considered as the subject matter for the issues of the case.

11.4 Compensation and expenses of the neutral arbitrator and expenses associated with requesting panels form the FMCS, shall be borne equally by the Employer and the Union. The cost for a transcript or translator shall be borne by the party requesting those services.

11.5 All disciplinary grievances shall be submitted to expedited arbitration. There shall be no briefs or transcripts. The arbitrator shall render a decision in writing within seven (7) days of the conclusion of the hearing.

11.6 Contract interpretation cases (non-discipline related) may be submitted to expedited arbitration by mutual agreement of the parties.

11.7 Except for expedited arbitrations, the decision of the arbitrator shall be issued within thirty (30) days of the hearing or submission of post-hearing briefs, and such briefs must be filed with the arbitrator within twenty-one (21) days of the hearing.

11.8 Arbitrators shall have no authority to amend, alter, add to or subtract from the terms of the Agreement.

11.9 All arbitration decisions shall be final and binding on the parties.

## ARTICLE 12 - WORKING CONDITIONS

12.1 Bar utility employees are prohibited from serving alcoholic drinks to customers.

12.2 While on the job employees may wear an official Union button not to exceed one and one-half inches in diameter, which may not contain wording other than the traditional identification of the Union.

12.3 Servers shall not be required to wash or dry glasses unless absolutely necessary for the proper operation of the business.

12.4 Utility and Busser employees are responsible for cleaning tables, mopping, window washing, dishes, trash collection, cleaning and organizing storerooms, stocking products in both work units and storerooms, assisting a runner or manager in receiving products from the commissary or other cleaning duties. However, Servers and Bartenders may be required to wipe down tables and counters as needed.

12.5 Runners are responsible for cleaning and organizing storerooms, stocking product in both units and storerooms, transferring supplies and equipment from secured storage areas to various units, receiving products from the commissary, assisting drivers in unloading trucks, preparing food orders, ensuring proper inventory and notifying management in the event of shortages or overages. Runners may also do Utility duties.

12.6 The Employer may not require any employee except Bussers, Runners, Utility employees, Cashiers, and Fast Food Attendants, to clean tables or to do sweeping or mopping unless absolutely necessary for the proper operation of the department. Provided, however, that back of house positions are required to clean their station prior to the end of their shift.

12.7 There shall be no discrimination by the Employer or the Union of any kind against any employee pertaining to hiring, promotions, discharge, pay, benefits, Union membership or benefits and rights, or all other aspects of employment because of race, religious creed, religious observance, color, age, sex, sexual orientation, gender identity, gender expression, national origin, ancestry, marital status, medical conditions as defined by applicable state or federal law, disability, genetic information or predisposition, military service, military and veteran status, pregnancy, child birth and related medical conditions, or any other classification protected by federal, state, and local laws and ordinances. The parties will cooperate to insure all employees are treated with dignity and respect.

12.8 It is further agreed that with respect to the Americans With Disabilities Act (ADA) should there be a conflict between any provision of this Agreement and compliance with the ADA, particularly essential job functions, physical requirements and the reasonable accommodation required by the ADA such as modified work schedules, reassignment, job restructuring, etc. the ADA requirements shall prevail. However, the Employer shall meet its ADA requirements in a manner as to create the least possible conflict with the terms of this Agreement.

12.9 In Food Service Areas (including Kitchens, Bars, and Cashier Stations), management will provide Safety Mats in compliance with food preparation/sanitation standards unless they would cause a risk to the general public or would disrupt the proper operation of the business.

12.10 The Employer will ensure that employees are trained to perform work that they are asked to perform outside of their regularly assigned classification except for basic tasks. Upon request by the Union to the Human Resources Department, the Employer will provide documentation within five (5) business days (Monday through Friday), that indicates training has been completed to ensure competent work performance in the classification.

12.11 The Employer will institute on all receipts a notice that provides for suggested tip amounts based upon of 15%, 18% and 20% of the total bill.

12.12 The Employer will reimburse employees for monthly parking up to a maximum of $30.00 per month.

**ARTICLE 13 - EQUAL BENEFITS ORDINANCE**

The Employer and the Union agree that the requirements of the Equal Benefits Ordinance of the City of Los Angeles, is hereby incorporated into this Agreement, including but not limited to the requirement that all benefits offered to the spouses of Employer's employees hereunder shall also be offered to the domestic partners of its employees.

## ARTICLE 14 - UNIFORMS

14.1 Uniforms required by the Employer shall be furnished by the Employer. A minimum of two uniforms shall be furnished for all employees.

14.2 A uniform is defined as a distinctively designed or colored article of wearing apparel not worn as ordinary, basic street clothing, which the Employer requires the employee to wear while on the job. The article of clothing shall be considered a uniform under the terms of this Agreement at all times and employees are strongly encouraged to wear uniforms only while at work.

14.3 The Union shall make every effort to aid the Employer with respect to the return of uniforms.

14.4 It is agreed by the Union that a deposit may be required on all uniforms furnished by the Employer and that such deposits shall be returned to the employee upon termination, provided that the employee shall return to the Employer all uniforms in his or her possession which have been checked-out to the employee and which are covered by deposit.

14.5 Employees shall at all times be neat and clean.

14.6 Employees with 12 or more months of service required to wear slip resistant shoes will be reimbursed for one pair of shoes each year up to a maximum amount of $35.00. Employees with 12 or more months of service required to wear steel toe shoes will be reimbursed for one pair of steel toe shoes each year up to a maximum of $45.00. If employee chooses a shoe costing more than $35 or $45 reimbursed amount, the employee will pay the difference.

## ARTICLE 15 - SUCCESSORS

This Agreement shall be binding upon the heirs, successors and assigns of parties hereto.

## ARTICLE 16 - LIMITATION OF FILING OF CLAIMS

16.1 In no event shall the Employer be liable to the employee in excess of thirty (30) calendar days prior to the date of filing a claim by an employee for any claims which are due him from the Employer, including adjustment of wages, hours or any other benefit, except for the following: Health & Welfare and Pension contributions, increases as called for by the contract which are not implemented by the Employer and vacations as noted below. In the case of increases not given, the right to retroactive payment would commence from the date of the increase.

16.2 Vacation claims shall be filed by the employee not later than thirty (30) calendar days following receipt of improper vacation time or pay. Claims not filed during this thirty (30) day period are deemed waived.

16.3 In cases of promotion, the pay would be retroactive to the date of promotion or the date of actually doing the new job or duties.

## ARTICLE 17 - HOLIDAYS

17.1 Any employee with more than six (6) months of service who does not work on New Year's Day, Memorial Day, Christmas Day, Thanksgiving Day, Labor Day, or Fourth of July, and who otherwise qualifies, shall receive one days' pay at the employee's current hourly rate of pay. The one days' pay shall be equal to one-fifth of the total number of straight time hours of the employee's regularly scheduled work week. Such employees who work on New Year's Day, Memorial Day, Christmas Day, Thanksgiving Day, Labor Day, or Fourth of July shall receive their holiday pay plus straight time for time worked. To be eligible for straight time holiday pay, if not worked, an employee must have worked the last regular scheduled shift before the holiday, the next regular scheduled shift after the holiday, and the holiday itself, if scheduled by the Employer, unless excused be Employer.

17.2 For holiday pay calculation purposes of this Article, an employee's regularly scheduled work week shall be determined by the average number of hours worked or paid in each of the preceding three weeks.

17.3 If a holiday falls on the sixth or seventh day in the employee's work week and the employee is required to work, the next succeeding day shall be the deemed holiday.

17.4 There shall be no pyramiding of premium and holiday pay, provided however, if an employee is required to work overtime on the holiday, he shall receive for such overtime one and one-half times his holiday contract rate of pay for such overtime only.

17.5 On the day that an employee is sworn in as a U.S. citizen, the employee will be excused from work and will be compensated for all lost time at the employee's current hourly rate of pay.

## ARTICLE 18 - HEALTH, WELFARE, AND TRAINING PLAN

18.1 The Employer agrees to make contributions to the Santa Monica Hotel Employees and Restaurant Employees Benefit Fund in the amount of $5.64 (five dollars and sixty four cents) per hour for each hour worked by or paid for an employee, starting with the first day of employment or May 1, 2018, whichever is later.

Contributions shall be made in the manner as prescribed by the Trustees and remitted by the 15th of each month for the preceding month.

18.2 The employer hereby accepts, ratifies, and becomes bound by the terms of that certain Agreement of Trust initially executed in 1953 and subsequently amended or as may be amended from time to time by the signatory Employers and the Union establishing the Santa Monica Hotel Employees and Restaurant Employees Benefit Fund, the same as though he were signatory thereto.

18.3 It is agreed that the Health and Welfare Plan and Trust provided for hereunder shall conform to all applicable law. It is further agreed that the Trust and Plan shall be written so that contributions made by each Employer to the Trust shall be allowable as business deductions for the purposes of income tax laws.

18.4 Hospitality Industry Training and Education Fund

The Employer and the Union desire to establish the highest standards of service to patrons and guests in the Los Angeles International Airport and the Hospitality Industry and to create the maximum job opportunity and advancement for men and women working in the hospitality industry.

Therefore, the Union has established the "Hospitality Industry Training and Education Fund" (HITEF).

The Union and the Employer shall establish a joint Training Committee including representation of Labor Management, which shall serve in an advisory capacity to the HITEF and the Fund Director.

Effective May 1, 2018, the Employer will contribute three ($0.03) cents per hour paid into the HITEF.

18.5 Los Angeles Hotel-Restaurant Employer-Union Retirement Fund

The Employer agrees to participate in the Los Angeles Hotel-Restaurant Employer-Union Retirement Fund ("Retirement Fund"), as originally established effective April 15, 1955 and subsequently amended, is hereby continued.

The Employer acknowledges receipt of a copy of, and to accept, be bound by, and comply fully with all of the terms of the Trust Agreements of Retirement Fund and any amendments thereto whether hereto force or hereafter made.

Effective May 1, 2018, Employer contributions per hour worked or paid, shall be twenty ($0.20) cents per hour, and payable into the Retirement Fund contributions by Employer on behalf of all employees.

Payments shall be made prior to the 15th of each month for the previous month. The payment shall be made to the Los Angeles Hotel-Restaurant Employer-Union Retirement Fund. Each monthly payment shall be accompanied by a true and complete list of employees and the hours worked by each employee per calendar month.

The rights of the Trustees to take action with respect to any failure of the Employer to comply with the provisions of this Article shall not be in derogation of or in any way limit any rights in which the Union otherwise has as a result of the failure of the Employer to comply with such provisions, including, but not limited to, the right to take economic action.

**ARTICLE 19 - STRIKES AND LOCKOUTS**

19.1 During the term of this Agreement neither the Union nor any employee shall authorize, cause, engage in, sanction or assist in any slowdown, work stoppage, refusal to perform services or strike against the Employer. Upon learning of any such prohibited action, the Union shall make every reasonable effort, including the issuance of orders, verbal and written, to the employees of their obligation to return to work.

19.2 During the term of this Agreement, the Employer shall not cause, permit or engage in any lockout of its employees.

**ARTICLE 20 - SICK PAY BENEFIT**

20.1 Employees will be entitled to earn one (1) hour of paid sick leave for every thirty (30) hours worked and may be accrued up to a maximum of seventy-two (72) hours. An employee may use paid sick leave beginning on the ninetieth (90th) day of employment. Sick leave shall be taken and deducted in one hour increments.

20.2 The Employer may require written proof of the employee's inability to work for absences of three (3) consecutive days or more or where the history or circumstances suggest a pattern of abuse. If such proof is not provided upon request, sick leave will not be paid.

20.3 The amount of a day's sick pay benefit provided herein shall be up to the number of hours in the employee's regularly scheduled work day on the day(s) of the illness or injury, multiplied by the employee's current straight-time hourly rate of pay.

20.4 An employee will only be entitled to receive sick pay benefits for such days of sickness as constitute the employee's regular days of work.

20.5 Unused sick pay benefit shall not be paid under any circumstances.

20.6 Consistent with scheduling needs and seniority, employees may use one day of sick leave per year for a floating personal holiday, provided they submit a written request for the holiday at least two weeks in advance.

**ARTICLE 21 - FUNERAL LEAVE**

21.1 Employees who have successfully completed the 90-day Introductory Period are entitled to one (1) day of paid leave and up to three (3) additional days of paid leave to be paid from available sick pay benefits in the event of a verified death of an immediate family member. Employees are also entitled up to three (3) additional days of unpaid leave in such events. For the purpose of this Article only, "immediate family member" includes the employee's mother, father, mother-in-law, father-in-law, spouse, or bona fide domestic partner (as defined in Employer's corporate policy), child, sibling, or grandparent.

**ARTICLE 22 - DISCIPLINE**

22.1 Introductory Employees. During his first ninety (90) days of employment with the Employer, an employee shall be considered introductory and may be discharged at the Employer's discretion without recourse to the Grievance and Arbitration provisions of this Agreement.

22.2 Written disciplinary notices issued to employees must specify the reason for which the notice is issued. Any such notice must be issued to employees within five (5) days (excluding Saturday, Sunday and holidays) of the event or action for which the disciplinary notice is issued, or within five (5) days (excluding Saturday, Sunday and holidays) of knowledge of the event or action. If the employee cannot be reached before said five days expire, the Employer shall notify the Union in the meantime.

22.3 A legible copy of any written disciplinary notice shall be given to the employee at the time of issuance.

22.4 The Employer may only discipline for reasons of just cause as determined by the Employer's policies and procedures.

22.5 An employee may request the attendance of a Union representative at an interview where there is a reasonable expectation that disciplinary measures may be taken, with the understanding that the Employer is entitled to conduct such interviews and hear responses directly from its employees without interference from said Union representative. It is understood that the Union representative has the right to carry out his representational function. The right to request the attendance of a Union representative does not mean a specific individual, and an employee may not impede an investigation by insisting upon the presence of a specific representative if another Union representative is then available. Nor may the Employer insist on the presence of a specific Union representative if another Union representative is available.

22.6 Employees shall only be issued warning notices (exclusive of termination) on the job during work time.

22.7 Disciplinary or corrective counseling notices may not be considered as a step in progressive discipline if they were written more than one (1) year prior to the date of a new disciplinary or corrective counseling action. Such documents more than one (1) year old may only be used as evidence that an employee was aware of a rule or policy, or to show past corrective measure taken, or as evidence of a pattern of behavior (such as a history of racially discriminatory actions or sexual harassment, etc.).

22.8 No employee shall be placed in a "suspended pending investigation" status for longer than five (5) days (excluding Saturdays, Sundays and holidays) unless the parties mutually agree to extend such time limit, or if the employee is deemed to be uncooperative or unresponsive during an investigation. Within this period the Employer shall either take disciplinary action against or reinstate the employee. If the Employer is unable to contact a terminated employee, the employee may be notified by certified or package-tracked mail (such as Federal Express or Airborne Express) after the completion

of the suspension pending investigation. In the event a tipped employee is suspended pending investigation and is subsequently exonerated and returned to work, the employee shall be compensated at the rate of time and one-half (1 ½) times his/her regular rate of pay for all hours missed as a result of the suspension.

## ARTICLE 23 - SHOPPER SERVICES

The Union recognizes that the Employer employs shopping investigators or "shoppers" in its operations. The Employer's purpose for using shoppers is to ensure quality of customer service, to ensure than proper procedure is being followed in cash handling and to ensure the integrity of cash transactions. The Union and the Employer agree on the following rules for the Employers use of shoppers and shopper reports:

23.1 Employees shall be informed during their training of the Employer's use of shoppers. Employees shall also be informed of these rules with regard to the use of shoppers and of shoppers' reports. The Employer shall issue a copy of these rules to new employees in their new hire packets and shall post these rules prominently. The Employer will post the format used by shoppers in preparing reports.

23.2 Apart from the BARS program shoppers, shopping investigators employed by the Employer shall be licensed private investigators or shall be employed by a licensed private investigator as required by California Labor Code Section 2930 and California Business and Professional Code Sections 7521, 7522 and 7523.

23.3 Shoppers shall provide factual reports of their observations of customer service situations and cash handling transactions. Shoppers shall not use methods which would intimidate or confuse employee. The Employer shall not employ shopping services which receive an additional fee for generating negative reports or pay their employees a fee or bonus for negative reports.

23.4 Employees shall be shown copies of any shopper reports which are retained in the employee's personnel file.

23.5 When shopper reports are used for disciplinary purposes, the Employer shall provide copies of the reports to the employee. The Employer shall supply a copy of such report to the Union upon request.

23.6 Management shall inform the employee as soon as possible, but in no event later than five (5) days (excluding Saturday, Sunday and holidays) after Employer receiving the shopper's report, of any irregularity in a shopper's report that may result in disciplinary action (e.g. shopper report received at noon on Monday and action must be taken by noon the following Monday). In the event the employee cannot be reached before the time limit expires, the Employer shall notify the Union in the meantime.

23.7 The Employer agrees that, when and where possible, counseling and re-training are preferable to disciplinary action in correcting problems that arise in shopper reports.

23.8 Discipline resulting from shopper reports for quality of customer service issues that are subjective in nature, such as perceived friendliness, smiling, etc.; issues related to staffing levels, such as promptness of service; and issues related to upselling shall always be progressive in nature, beginning with a verbal warning on the first offense.

23.9 The Employer shall, from time to time, enlist the services of a third party vendor, BARS program, to perform compliance checks within the workplace. The checks will verify compliance with Employer's Responsible Alcohol Service Training. The BARS program will send a representative between the ages of 21 and 25 to the restaurant to order an alcoholic beverage. If the server/bartender properly IDs the representative, they will be handed a Green Card. If the server/bartender does not ask for ID prior to turning to retrieve the drink, a Red Card will be issued. The representative will speak with the manager on duty to inform them of the results of the compliance check. Employer uses the BARS program visits as a training tool; however due to the ramifications of compliance failure, a first-time Red Card issuance on a server/bartender will result in a written warning and a second-time Red Card issuance within twelve (12) months on a server/bartender will result in a termination of employment. If a liquor violation outside of the BARS program occurs, a first-time offense will result in termination of employment. Any changes to this program shall be discussed between the Union and Employer.

## ARTICLE 24 - LABOR/MANAGEMENT CONFERENCES

The Employer and the Union agree that, during the life of this Agreement, there shall be a Labor/Management Committee consisting of individuals from both parties (not to exceed five from each) to be designated, in writing, by each party to the other. On a case by case basis, the parties may agree to additional representatives. Meetings will be held at mutually agreeable times and places so as to apprise the other of problems, concerns, suggestions, etc. related to the operations and the work force, all to promote better understanding with the other. A written agenda shall be established for each meeting. Such a meeting shall not be construed as opening the Agreement for negotiations, nor shall it constitute a step in the grievance procedure.

## ARTICLE 25 - FULL AGREEMENT

The parties acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to all proper subjects of collective bargaining and that all such subjects have been freely discussed and negotiated and the agreements contained in this Agreement were arrived at after the free exercise of such rights and opportunities.

## ARTICLE 26 - DURATION

This Agreement shall be effective April 2, 2018 and shall continue in full force and effect up to and including April 1, 2020 and it shall automatically continue in full force and effect from year to year thereafter unless written notice is given by either party hereto to the other party on or before sixty (60) calendar days prior to April 2, 2020 or any annual expiration date thereafter, requesting that the Agreement be terminated, modified or amended. In the event such written

notice is given by either party hereto to the other, the Agreement shall terminate on April 1, 2020 or on the first expiration date occurring after such notice.

FOR THE EMPLOYER:

Thomas Avallone, President
Planet Express LAX

6/4/18
Date

FOR THE UNION:

Kurt Petersen, Co-President
Local 11, UNITE HERE

5/30/18
Date

## Exhibit A: Wage Scales

| Effective March 1, 2018 | | |
|---|---|---|
| **Classification** | **Hired before Effective date** | **Hired on or after Effective date** |
| Line Cook | $ 15.50 | $ 14.75 |
| Prep Cook | $ 14.50 | $ 13.25 |
| Host/To-Go Host | $ 14.50 | $ 13.25 |
| Server | $ 13.94 | $ 12.08 |
| Bartender | $ 13.94 | $ 12.08 |
| Busser | $ 13.94 | $ 12.08 |
| EOS Cashier | $ 14.50 | $ 13.25 |
| Utility | $ 14.50 | $ 13.25 |
| Sandwich Maker | $ 14.50 | $ 13.25 |
| EOS Supervisor | $ 16.00 | $ 15.00 |
| PH Kitchen Supervisor | $ 18.00 | $ 17.00 |
| PH Service Supervisor | $ 20.50 | $ 20.00 |

| Effective 7/1/2018<br>$0.30 per hour bucket increase towards the Health, Welfare & Training Plan to be allocated by the Union | | |
|---|---|---|
| **Classification** | **Hired before Effective date** | **Hired on or after Effective date** |
| Line Cook | $ 16.15 | $ 15.35 |
| Prep Cook | $ 15.15 | $ 14.00 |
| Host/To-Go Host | $ 15.15 | $ 13.90 |
| Server | $ 14.35 | $ 13.85 |
| Bartender | $ 14.35 | $ 13.85 |
| Busser | $ 14.60 | $ 13.85 |
| EOS Cashier | $ 15.15 | $ 14.00 |
| Utility | $ 15.05 | $ 14.00 |
| Sandwich Maker | $ 15.15 | $ 13.90 |
| EOS Supervisor | $ 16.50 | $ 15.50 |
| PH Kitchen Supervisor | $ 18.25 | $ 17.50 |
| PH Service Supervisor | $ 20.75 | $ 20.25 |

| Effective 7/1/2019<br>$0.30 per hour bucket increase towards the Health, Welfare & Training Plan to be allocated by the Union | | |
|---|---|---|
| **Classification** | **Hired before Effective date** | **Hired on or after Effective date** |
| Line Cook | $ 17.25 | $ 16.50 |
| Prep Cook | $ 16.25 | $ 15.50 |
| Host/To-Go Host | $ 16.25 | $ 15.40 |
| Server | $ 15.35 | $ 15.25 |
| Bartender | $ 15.35 | $ 15.25 |
| Busser | $ 15.65 | $ 15.35 |
| EOS Cashier | $ 16.05 | $ 15.40 |
| Utility | $ 15.95 | $ 15.40 |
| Sandwich Maker | $ 16.05 | $ 15.40 |
| EOS Supervisor | $ 17.25 | $ 16.25 |
| PH Kitchen Supervisor | $ 19.25 | $ 18.25 |
| PH Service Supervisor | $ 21.75 | $ 20.75 |

Attendance: Being the best means being on time to provide fast and flawless service every shift. If you are excessively absent or late, you create inconvenience for our guests. In addition, it places an unfair burden on co-workers who may have to perform additional work or may be called in on their day off.

The schedule in each department is designed to provide the best guest service. The Attendance Policy is designed to be fair and consistent in recording punctuality and attendance.

The Attendance Policy is based on a six (6) point system. Points are accumulated when an employee is late, leaves early, is absent from work. A total of six (6) points in any rolling twelve (12) month period results in separation of employment.

It is your responsibility to notify your supervisor at least two (2) hours prior to the start of your shift if you are going to be late or absent or as much notice is practicable if the absence is protected under any applicable law or ordinance. "Proper Notification" is calling the Restaurant or providing a message to your supervisor through the online scheduling system – calls to management cell phones is not an acceptable form of notification. If you do not follow your department call-in procedures, it will result in progressive discipline. Being on time means being at your workstation, fully prepared to begin work at your scheduled start time. Absences will be recorded as follows:

| Attendance Infraction | Number of Points |
|---|---|
| Tardy – Reporting late to work.<br>("On time" means in full uniform, ID badge, proper appearance, and clocked-in at shift start time) (i.e., 1 minute late is considered late; however, up to 5 minutes late, management will, in its sole discretion, determine if a point violation will be assessed depending on the circumstances)<br>(Tardy means not on time)<br>(Notification alone does not constitute approval)<br>(This includes returning late from breaks).<br>• Up to 30 minutes late<br>• More than 30 minutes late (employee may be sent home if shift has been filled without reporting pay). | ½<br>1 |
| Early-Out (Employee request not approved) – after mid-shift | ½ |
| Early-Out (Employee request not approved) – before mid-shift | 1 |
| Absence – 1 or more consecutive shifts (except when protected under any applicable law or ordinance) | 1 |
| Peak Business Absence – absence on a Peak Business Day (except when protected under any applicable law or ordinance).<br>• A consecutive shift absence that begins prior to and extends into or beyond any Peak Day will result in Peak Business | 1.5<br>(peak business absence, first shift)<br>1<br>(peak business |

| | |
|---|---|
| Absence points. | absence point for additional shift(s)) |
| Absence on a Denied Day Off - absence on a day that was requested off, but denied.<br><br>• A consecutive shift absence that begins prior to and extends into or beyond any Denied Day Off will result in Absence on a Denied Day Off points. | 1.5<br>(Absence on a Denied Day Off, first shift)<br><br>1<br>(Absence on a Denied Day Off for additional shift(s)) |
| Improper Call Out – providing less than 2 hours' notice of an absence (i.e., not providing Proper Notification) | 1.5 |
| No Call/No Show – Without Just Cause (Defined as not calling during the entirety of one's shift to notify management that they won't be coming in –the employee must speak directly to the manager on duty)<br>1st Offense – 3-shift suspension (unpaid)<br>• Discipline (the suspension) remains active for 12 consecutive months and will not be eliminated after six (6) consecutive months of perfect attendance. In the event an employee is subject to progressive discipline because of the point issued for this infraction, the more severe counseling step will be administered. All else being equal, the progression will follow the steps outlined in the chart listed below.<br>2nd Offense – Separation<br>• Consecutive shifts of No Call/No Show will result in a suspension pending investigation with a possible loss of employment. | 3<br><br>N/A |

1. Point(s) result in the following progressive counseling:

| Point Number | Counseling Step |
|---|---|
| 2 | Verbal Warning (Disciplinary Notice) |
| 3 | Written Warning (Disciplinary Notice) |
| 4 | 1-shift disciplinary suspension (unpaid) |
| 5 | 3-shift disciplinary suspension (unpaid), with final written warning |
| 6 | Separation |

**Peak Business Days**
Employer's Peak Business Days are Christmas Day, New Year's Eve, New Year's Day, Thanksgiving Day, and Independence Day. Employees who are absent on any of these designated days, will be issued one and a half (1.5) attendance points.

Points are not recorded for:

- Jury Duty with providing Employer with practicable notice
- Bereavement Leave with providing Employer with practicable notice
- Approved Family Medical Leave (please see Family Medical Leave Guidelines) with providing Employer with practicable notice— However, employees on intermittent leave must follow proper call in procedures for each shift not worked due to intermittent leave, unless otherwise provided by law.
- Sick Leave per applicable law with practicable notice
- Approved leave under the CBA
- Approved Military Leave with practicable notice
- Documented on-the-job-injury
- Pre-approved vacation under the DBA

An employee can reduce his/her point total on the twelve (12) month anniversary of an incident; that is, the point(s) for that incident drop off and are no longer counted.

After one-hundred eighty (180) days of perfect attendance, all existing attendance points and counseling notices issued under the attendance policy will become inactive and no longer used for progressive counseling purposes, excluding patterned absences. Employees on any type of leave will not have the period of leave counted towards fulfillment of the one hundred eighty (180) day requirement.

Each step of progressive counseling need not be issued prior to termination provided that points have been properly assessed. For example, an employee with 3 points who is a no-call/no-show would be separated because of the accrual of 6 points, despite not having received a prior Final Written warning.

The Employer reserves the right to review each situation on a case-by-case basis, including in situations implicating the Americans with Disabilities Act.

This Attendance Policy is effective on the Effective Date and will remain in full force and effect throughout the term of the current collective bargaining agreement.